Opinion issued
June 3, 2010








 










 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

________________

 

NO. 01-08-00936-CR

________________

 



CLINTON WILLIAMS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee 

 

 



On Appeal from the County Court

Colorado County, Texas

Trial Court Cause No. 20765

 

 



MEMORANDUM OPINION

 

          Following a bench trial, appellant, Clinton Williams, was
convicted of possession of marijuana in an amount of two ounces or less.  See Act of May 29, 1994, 73rd Leg., R.S., ch. 900, § 2.02, 1993 Tex.
Gen. Laws 3705, 3709 (amended 2009) (current version at Tex. Health & Safety
Code Ann. § 481.121 (Vernon Supp. 2009)).[1]  The court assessed punishment at 180 days in
jail, suspended the sentence, placed appellant on community supervision for two
years, and imposed a $500 fine.  On
appeal, appellant argues that: (1) the trial court erred in denying appellant’s
motion to suppress, and (2) the
evidence is legally and factually insufficient to support his conviction.  We affirm.

Background

On March 25, 2008 at approximately
11:00 p.m., appellant was stopped by Texas Department of Public Safety (“DPS”) Trooper
Josh West for traveling 19 miles over the speed limit.  West initiated the stop as appellant passed
him on I-10 traveling 84 miles per hour. 
After West activated his lights and began pursuit in his marked patrol
car, appellant continued driving in the left lane for approximately 30 to 40
seconds before pulling over to the shoulder. 
West was in close proximity to appellant’s vehicle during the pursuit
and traffic was light, so he found it strange that appellant did not pull over
sooner.  West testified that he was
certain appellant saw the marked patrol car. 
Because appellant took an unusually long time to pull over, West suspected
that appellant might be trying to hide something in the vehicle.  

Once stopped, West approached the
vehicle.  The back driver’s side window
of appellant’s vehicle was covered with tape and cardboard, obstructing West’s
view inside.  To make contact with
appellant, West had to tap on the window to alert appellant to roll down the
passenger side window.  Appellant told
West that he was traveling from Austin to Houston but inadvertently went
through San Antonio because he was talking on his cell phone.  West commented that San Antonio was “a little
bit out of the way,” and appellant responded that he “didn’t even realize it
until [he] was in San Antonio.”  West
testified that I-10 was a main corridor for drugs, so appellant’s route made
him suspicious that appellant was possibly transporting drugs. 

Trooper West determined that
appellant’s registration and inspection had both expired in December 2007.  While speaking with the officer, appellant
acted nervous and commented under his breath that “he was screwed.”  West testified that “[t]here was a faint
smell of smoke, possibly marijuana coming from the vehicle.”  Appellant told the officer that he had been
“smok[ing] menthol [cigarettes].” 

Because of appellant’s slow response
to pull over, suspicious route, comment that “he was screwed,” abnormal
nervousness and shaking, and the smell of marijuana, Trooper West suspected
appellant was involved in criminal activity. 
A check of appellant’s criminal history revealed a prior arrest for
possession of marijuana in 2001, as well as a prior arrest in Utah.  West attempted to ask appellant if he had
ever been arrested, but without letting the officer finish the question,
appellant quickly answered, “No.”  West
specifically asked appellant if he had ever been arrested for drugs or weapons,
to which he responded, “no.”  West
testified that appellant mentioned something about Utah but denied having a
prior drug arrest.  When asked, appellant
also denied having any illegal drugs or weapons in his vehicle.

Because of his prior suspicions and
appellant’s misrepresentation of his criminal history, Trooper West asked for
appellant’s consent to search the vehicle. 
West testified that appellant responded, “Okay, but you probably don’t
want to due to the glass and the pornography in the vehicle.”  

Believing that appellant had
consented to the search of his vehicle, West returned to his patrol car to
inform dispatch that he planned to search the vehicle.  As West approached the vehicle to begin the
search, appellant became angry, asking the officer what he was doing.  When West told him that he was going to
search the vehicle, appellant said, “No, you’re not.”  West explained to appellant that he had
already consented to the search, but appellant denied ever giving consent.  Appellant became very angry and belligerent, yelling
that the officer was “not getting in the vehicle.”  Surprised by appellant’s reaction, West tried
to calm appellant by explaining that he thought he had given consent.  West did not proceed with the search, but
because of appellant’s belligerent behavior, West detained and handcuffed
appellant for his safety.  When asked why
he was refusing consent, appellant “stated that he had broken glass in the vehicle
and he did not want [West] to pull his stuff out” and “scatter stuff
everywhere.”  Additionally, appellant
said he had “porn” in his vehicle that he “d[id]n’t want pulled out.”  

To dispel his suspicions of criminal
activity, Trooper West decided to call a canine unit to the scene.  The DPS canine unit was not available, so he
called a canine unit from a neighboring police department to the scene.  Officer John Williams with the Eagle Lake
canine unit arrived approximately 45 minutes later.  Officer Williams noticed the smell of marijuana
coming from the vehicle.  A canine sniff open-air
search was conducted around appellant’s vehicle by a certified drug detection
dog and Officer Williams.  The dog
alerted to the driver’s side window and the passenger side door seam.  After the dog’s alert, Trooper West and
Officer Williams searched the vehicle and found a baggie containing marijuana
and a small tinfoil “hitter pipe” in the center console.  West and Williams testified that, based on
their training and experience, the substance in the baggie was marijuana.  Also, based on his training and experience, Trooper
West opined that it was a usable quantity of marijuana.

As captured in the video taken from
West’s dashboard video camera, appellant, after receiving his statutory
warnings, explained that he “hung out with a girl [he] d[oes]n’t usually hang
out with and she gave [him] some weed.” 
He admitted that he smoked the marijuana earlier that day before he had left
Austin.  He explained that he had planned
to “throw it out the window an hour ago” and commented, “I should have thrown
it out the window when I saw your lights.” 
Appellant apologized to Trooper West for his attitude, and explained,
“You were dead on.  I was trying to hide
the marijuana.”  Appellant also admitted
that he had lied when he told West that he had pornography in the vehicle.  Appellant stated, “That was just a cover-up
for the weed.”

The State offered, and the court
admitted, the baggie containing the marijuana and the “hitter pipe” that was
recovered from appellant’s vehicle into evidence as State’s Exhibits 1 and
1A.  Appellant did not call any
witnesses.  However, appellant offered
West’s dashboard camera videotape into evidence and played it in its entirety for
the court.    

 

 

Suppression
of Evidence

Appellant
argues that the trial court erred in denying his motion to suppress because Trooper
West and Officer Williams found the contraband as a result of an unlawful detention
unsupported by reasonable suspicion.  While he concedes that West had sufficient
cause to initiate a traffic stop for speeding, appellant argues that his
continued detention was unreasonable and a “fishing expedition” for unrelated
criminal activity.  

          A.      Standard
of Review








          We
review the trial court’s ruling on a motion to suppress under an
abuse-of-discretion standard.  Shepherd v. State, 273 S.W.3d 681, 684
(Tex. Crim. App. 2008).  We view the
evidence adduced in the light most favorable to the trial court’s ruling.  Id.  “We give almost total deference to a trial
court’s express or implied determination of historical facts and review de novo
the court’s application of the law of search and seizure to those facts.”  Id.

The trial court denied appellant’s
motion to suppress but did not make explicit findings of fact or conclusions of
law.  “Under these circumstances, we
imply the necessary fact findings that would support the trial court’s ruling
if the evidence, viewed in the light most favorable to the trial court’s
ruling, supports these implied fact findings.”  
Weaver v. State, 265 S.W.3d 523, 533 (Tex. App.—Houston [1st
Dist.] 2008, pet. ref’d) (citing State v. Kelly, 204 S.W.3d 808, 819
(Tex. Crim. App. 2006)).  We will sustain
the trial court’s ruling if it is reasonably supported by the record and is
correct on any theory of law applicable to the case, even if the trial court
gave the wrong reason for its ruling.  State
v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). 

          B.      Applicable Law

When a traffic violation is committed
within an officer’s view, the officer may lawfully stop and detain the person
for the traffic violation.  Walter v. State, 28 S.W.3d 538, 542
(Tex. Crim. App. 2000).  A traffic stop
is a detention and must be reasonable under the United States and Texas
Constitutions.[2]  Davis
v. State, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997) (en banc); Magana v. State, 177 S.W.3d 670, 673
(Tex. App.—Houston [1st Dist.] 2005, no pet.). 
“Reasonableness is measured in objective terms by examining the totality
of the circumstances.”  Spight v. State, 76 S.W.3d 761, 765
(Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing Ohio v. Robinette, 519 U.S. 33, 39, 117 S. Ct. 417 (1996)).  To be reasonable, a traffic stop must be
temporary and last no longer than is necessary to effectuate the purpose of the
stop.  Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319 (1983); Davis, 947 S.W.2d at 245.  “The investigative methods employed should be
the least intrusive means reasonably available to verify or dispel the officer’s
suspicion in a short period of time.”  Davis, 947 S.W.2d at 245 (citing Perez v. State, 818 S.W.2d 512, 517
(Tex. App.—Houston [1st Dist.] 1991, no pet.). 
Once the reason for the stop has been satisfied, police officers may not
use the stop as a “fishing expedition” for unrelated criminal activity.  Id. at
243.

Any continued detention beyond the
reason for the initial traffic stop must be based on reasonable suspicion,
requiring that the officer have articulable facts which, taken together with
reasonable inferences from those facts, would warrant a person of reasonable
caution to conclude that the individual stopped was engaged in criminal
activity.  Id. at 244–45.  To establish
reasonable suspicion, an officer must be able to articulate something more than
an unparticularized suspicion or “hunch.”  United
States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581 (1989).  The determination of reasonable suspicion must
be based on commonsense judgments and inferences about human behavior.  Illinois
v. Wardlow, 528 U.S. 119, 125, 120 S. Ct. 673 (2000).  Following an initial traffic stop, an officer
may rely on all facts ascertained during the course of his contact with the
stopped individual to develop articulable facts that justify further detention.
 Razo
v. State, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.] 1979); Sims v. State, 98 S.W.3d 292, 294 (Tex. App.—Houston
[1st Dist.] 2003, pet. ref’d).  Further,
in forming reasonable suspicion to justify a continued detention, an officer
may draw on his training and experience.  Estrada
v. State, 30 S.W.3d 599, 603 (Tex. App.—Austin 2000, pet. ref’d); see also United States v. Cortez, 449
U.S. 411, 421, 101 S. Ct. 690 (1981).

          In support
of his suppression argument, appellant cites to Johnson v. State for the proposition that when behavior is “as
consistent with innocent activity as with criminal activity,” it cannot support
a finding of reasonable suspicion.  See Johnson v. State, 658 S.W.2d 623,
626 (Tex. Crim. App. 1983), overruled by
Woods v. State, 956 S.W.2d 33, 37 (Tex. Crim. App. 1997).  Prior to Woods,
the “as consistent with innocent activity as with criminal activity” was the
proper test.  Woods, 956 S.W.2d at 35–36. 
However, in Woods, the Texas
Court of Criminal Appeals disapproved of the test and expressly repudiated its decision
in Johnson.  Id.  The Court held that the “reasonableness
of a temporary detention must be examined in terms of the totality of the
circumstances and will be justified when the detaining officer has specific
articulable facts, which taken together with rational inferences from those
facts, lead him to conclude that the person detained actually is, has been, or
soon will be engaged in criminal activity.” 
Id. at 38.

          

 

C.      Analysis

          Because appellant does
not challenge the legality of the original traffic stop, we focus our inquiry
on whether Trooper West had reasonable suspicion to continue to detain
appellant.  

When Trooper West first initiated the traffic stop, appellant continued
driving for 30 to 40 seconds despite West’s close pursuit in a marked squad car
with its lights and siren activated. 
Because traffic was light, West found it suspicious that appellant did
not pull over sooner and believed he might be trying to hide something.  West testified that, normally when traffic is
light, drivers will automatically tap their brakes and try to get over to the
shoulder as soon as possible after the officer activates his lights to initiate
a traffic stop.  

After approaching appellant’s stopped vehicle, West had to tap on the
window to alert appellant to roll down the passenger side window.  Appellant informed West that he was traveling from Austin to Houston
but inadvertently went through San Antonio because he was talking on his cell
phone.  West testified that I-10, the
highway on which appellant was driving, was a main corridor for drugs.  While speaking with the officer, appellant acted
nervous and commented under his breath that “he was screwed.”  Appellant misrepresented his criminal history
to the officer.  West testified that
“[t]here was a faint smell of smoke, possibly marijuana coming from the
vehicle.”  When West approached the
vehicle to conduct the search that appellant had initially agreed to, appellant
withdrew his consent and became belligerent and angry.  

Trooper West was permitted to rely on
these observations that he obtained during his contact with appellant.  See Razo,
577 S.W.2d at 711; Sims, 98 S.W.3d at
294.  The facts give rise to reasonable
suspicion that appellant was engaged in criminal activity and provide
sufficient cause to prolong appellant’s detention for a canine drug unit.  See Sims,
98 S.W.3d at 295–96.

Appellant argues that each of the
facts relied on by the State can be explained by innocent behavior.  In his brief, appellant isolates each fact
and suggests an alternative, innocent explanation for the behavior.  However, this reasoning is contrary to the
“totality of the circumstances” standard for evaluating reasonable suspicion
and has been expressly disapproved by the United States Supreme Court.  In Arvizu,
the Supreme Court held that courts should not engage in a “divide-and-conquer”
analysis of the facts, but should instead look at the totality of the
circumstances to see if an officer had developed reasonable suspicion.  United
States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744 (2002).  

A
canine sniff of the air surrounding a defendant’s property by a trained
drug-detecting dog is not considered a search within the meaning of the Fourth
Amendment because it provides limited information, “disclos[ing] only the
presence or absence of narcotics,” and “does not expose noncontraband items
that otherwise would remain hidden from public view.”  United
States v. Place, 462 U.S. 696, 707, 103 S. Ct. 2637 (1983).  The use of a drug dog is a minimally intrusive method
of investigation to verify or dispel an officer’s suspicion that a vehicle
contains illegal drugs.  Josey v.
State, 981 S.W.2d 831, 841(Tex. App.—Houston [14th Dist.] 1998, pet. ref’d)
(holding 90-minute delay for a drug dog was not unreasonable).  

During the traffic stop, appellant
exhibited behavior that led Trooper West to suspect that he was involved in
criminal activity and, specifically, that he had illegal drugs in his
vehicle.  When appellant withdrew his
earlier consent to search the vehicle, West attempted to locate a canine
unit.  The DPS canine unit was
unavailable, so West contacted a canine unit from a neighboring department so
that the canine sniff could be conducted at the earliest time possible.  The canine unit arrived to the scene
approximately 45 minutes later.  Given
the totality of the circumstances, the 45-minute detention was not
unreasonable.  See id.

The trial court did not abuse its
discretion by denying appellant’s motion to suppress because, based on the
totality of the circumstances, West had sufficient reasonable suspicion to
detain appellant until a canine unit could conduct an open-air search of the
air surrounding appellant’s vehicle.  We
overrule appellant’s first issue on appeal.

Sufficiency of the Evidence

          Appellant’s
second and third issues challenge the sufficiency of the evidence supporting
appellant’s conviction.  

          Specifically,
in his second issue, appellant argues that the evidence was insufficient to
support his conviction “when the prosecutor rested it’s [sic] case after the
motion to suppress hearing without offering any evidence at trial on the merits[.]”  Appellant cites to Cruz v. State in support of his argument, but Cruz is distinguishable.  See 657 S.W.2d 850, 850–51 (Tex.
App.—Texarkana 1983, no pet.).  Cruz involved a pretrial hearing on a
motion to suppress a handgun.  Id. 
After the hearing, the court did not rule on the motion but, instead,
reset the case.  Id.  On the reset date, the
court overruled the motion to suppress, admitted the handgun into evidence, and
called the case to trial.  Id. 
The State rested its case without offering anything further, and the
defendant offered nothing.  Id.  In
Cruz, it was apparent that the court
was holding a pretrial evidentiary hearing. 
The present case is distinguishable because appellant did not file a
pretrial motion to suppress and failed to bring his motion to the court’s
attention until the State’s case-in-chief. 
The record does not reflect that the court stopped trial to hold an
evidentiary hearing.  Rather, it is
evident from the record that the court carried the motion with the trial on the
merits.  Thus, because appellant’s second
issue is dependent on this Court’s first finding that a separate suppression
hearing was held, and because we do not so find, we need not reach this issue.

          In
his third issue, appellant argues the evidence was legally and factually
insufficient to show that “appellant intentionally or knowingly possessed
marijuana or a useable quantity of marijuana[.]”

          A.      Standard of Review








          In
an appeal from a bench trial, a trial court’s findings of fact have the same
weight as a jury’s verdict.  See,
e.g., Walmer v. State, 264 S.W.3d 114, 116–17 (Tex. App.—Houston [1st
Dist.] 2007, no pet.) (applying the same standard of review applicable to a
jury’s verdict to a sufficiency review of bench trial findings); see also
Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); Daniel v. Falcon
Interest Realty Corp., 190 S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.]
2005, no pet.) (“In an appeal of a judgment rendered after a bench trial, the
trial court’s findings of fact have the same weight as a jury’s verdict, and we
review the legal and factual sufficiency of the evidence used to support them,
just as we would review a jury’s findings.”). 









          In
our legal-sufficiency review, we view the evidence in the light most favorable
to the verdict and ask whether any rational trier of fact could have found the
crime’s essential elements beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Laster v. State, 275 S.W.3d 512, 517
(Tex. Crim. App. 2009).  The
standard is the same for both direct and circumstantial evidence cases.  Laster, 275 S.W.3d at 517–18.   We do not resolve any conflict of fact,
weigh any evidence, or evaluate the credibility of any witnesses, as this was
the function of the trier of fact.  See
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

           In our factual-sufficiency review, we view all
of the evidence in a neutral light.  Laster,
275 S.W.3d at 518.  We will set aside the
verdict only if (1) the evidence is so weak that the verdict is clearly wrong
and manifestly unjust or (2) the proof of guilt is against the great weight and
preponderance of the evidence.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see Laster, 275
S.W.3d at 518.  Under the first prong of Johnson,
we cannot conclude that a conviction is “clearly wrong” or “manifestly unjust”
simply because, on the quantum of evidence admitted, we would have voted to
acquit had we been the fact-finder.  Watson
v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Under the second prong of Johnson, we
also cannot declare that a conflict in the evidence justifies a new trial
simply because we disagree with the fact-finder’s resolution of that
conflict.  Id.  Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we
must be able to say, with some objective basis in the record, that the great
weight and preponderance of the evidence contradicts the fact-finder’s
determination.  Id.  In our factual-sufficiency review, we
must also discuss the evidence that, according to appellant, most undermines
the fact-finder’s determination.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).








          The
trier of fact is the ultimate judge of credibility.  Lancon v. State, 253 S.W.3d 699, 705
(Tex. Crim. App. 2008); see Tex.
Code Crim. Proc. Ann. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).   The fact-finder alone determines the weight
to be given to contradictory testimonial evidence because that determination
depends on the fact-finder’s evaluation of credibility and demeanor.  Lancon, 253 S.W.3d at 706.  The fact-finder may choose to believe all,
some, or none of the testimony presented. 
Id. at 707.

          B.      Possession of a Usable Quantity of Marijuana

          Appellant
was charged by information with possession of a usable amount of marijuana in
an amount of two ounces or less.  Tex. Health & Safety Code Ann. §
481.121.  The State had the burden to
prove the elements of the offense: (1) a person (2) did knowingly or
intentionally (3) possess (4) a usable quantity of (5) marijuana, and (6)
amount possessed in ounces as set forth in statute.   State v. Perez, 947 S.W.2d 268, 271 n.6 (Tex. Crim.
App. 1997) (citing Lejeune v. State,
538 S.W.2d 775, 777 (Tex. Crim. App. 1976)).

Appellant contends that there is
insufficient evidence to establish that the substance was marijuana and that it
was a usable quantity.

A “usable quantity” is “an amount
sufficient to be applied to the use commonly made thereof.”  Moore
v. State, 562 S.W.2d 226, 228 (Tex. Crim. App. 1977) (quoting Pelham v. State, 164 Tex. Crim. 226, 298
S.W.2d 171, 173 (Tex. Crim. App. 1957)). 
Common uses of marijuana include smoking in cigarette form or in a
pipe.  See Lejeune, 538 S.W.2d at 780. 
There must simply be enough evidence for a fact-finder to conclude there
was “enough marijuana to roll into a cigarette or smoke in a pipe.”  See
Kimberlin v. State, No. 05-02-02020-CR, 2004 WL 1110523, at *1–2 (Tex.
App.—Dallas May 19, 2004, no pet.) (not designated for publication). 

Usable quantity can be proven by
circumstantial evidence or inferences drawn from the evidence of the amount of
marijuana possessed. See Perez, 947
S.W.2d at 271 n.6.  Where the fact-finder
is able to examine the actual marijuana found in the defendant’s possession, it
can determine whether or not there is a usable quantity of the drug.  Kimberlin,
2004 WL 1110523, at *2 (citing Mitchell
v. State, 482 S.W.2d 223, 225 (Tex. Crim. App. 1972) (holding that matchbox
half full of marijuana, admitted into evidence, was sufficient to support
conviction)).

A police officer may be qualified to
testify that a substance is marijuana. 
Fierro v. State, 706 S.W.2d 310, 318 (Tex. Crim. App. 1986).  More recently, the Texas Court of
Criminal Appeals has held that a police officer can give opinion testimony as a
lay witness that a substance is marijuana when the opinion or inference is
rationally based on his or her perceptions and observations, and the testimony
is helpful to the clear understanding of the testimony or the determination of
a fact issue.  Osbourn v. State,
92 S.W.3d 531, 535 (Tex. Crim. App. 2002); see Tex. R. Evid. 701.  The
Court in Osbourn explained, “Unlike
other drugs that may require chemical analysis, marijuana has a distinct
appearance and odor that are familiar and easily recognizable to anyone who has
encountered it.”  92 S.W.3d at 538.

Trooper West and Officer Williams
each testified that, based on their training and experience, they were familiar
with the appearance and odor of marijuana. 
During the traffic stop of appellant, West noticed a faint smell of
marijuana coming from appellant’s vehicle. 
Williams also testified that he smelled marijuana when he walked by the
driver’s side of appellant’s vehicle.  

During the open air search around
appellant’s vehicle, Williams testified that his certified narcotics drug
detection dog alerted to appellant’s vehicle multiple times.  The dog was certified in detecting the odor
of illegal narcotics, including marijuana. 
After the dog positively alerted to the vehicle, Trooper West and
Officer Williams conducted a search of the vehicle and found a baggie
containing marijuana and a small tinfoil “hitter pipe” in the center
compartment of the vehicle.  Both West
and Williams testified that the substance in the baggie was marijuana.

Also, Trooper West’s dashboard camera
videotape revealed several incriminating statements by appellant.  When confronted with the marijuana from his
vehicle, appellant referred to the substance as “weed,” admitted to smoking it
before he had left Austin, stated he should have thrown it out the window when
he saw Trooper West’s emergency lights, and acknowledged that West was “dead
on” for being suspicious that appellant was hiding drugs.  His statement that he “should have thrown it
out when [he] saw [Trooper West’s] lights” implies that it was a usable amount
that he knew was unlawful to possess.

At trial, Trooper West identified State’s
Exhibit 1A as the baggie found in appellant’s vehicle, and it was admitted into
evidence.  Observing the substance at
trial, West again identified the substance in the baggie as marijuana and
testified that it was a usable quantity. 
The baggie containing the marijuana and tinfoil “hitter pipe” was
admitted at trial for the fact-finder to examine in determining whether there
was a usable quantity of marijuana.

In support of his sufficiency
argument, appellant relies on Cooper v.
State, 648 S.W.2d 315, 316 (Tex. Crim. App. 1983).  In Cooper,
an officer discovered a baggie containing loose marijuana and cigarettes, and
the officer testified that he assumed the cigarettes contained marijuana
because they were in the same container. 
Id.  In finding that the officer’s testimony was
insufficient, the Court noted that there was no evidence in the record that the
loose marijuana was a usable quantity, and the prosecution was relying on the
cigarettes to establish the element of a usable quantity of marijuana.  Id.  The present case is distinguishable
because here both Trooper West and Officer Williams were able to observe the
contents of the baggie and, based on their observations, determined that the
baggie contained a usable amount of marijuana.

Appellant argues, “The prosecution
tried to prove that the usable quantity of marijuana element can be assumed
solely on the observations of Trooper West and Officer Williams.”  However, the fact that West and Williams
based their conclusions on their “observations,” as conceded by appellant,
makes the present case distinguishable from the unsupported assumption in Cooper.  Further, appellant misstates the evidence in
the record to the extent that he suggests that the officers’ “assum[ptions]”
were the only evidence that the substance was a usable quantity of marijuana.  The seized marijuana was admitted into
evidence, allowing the fact-finder to examine the substance in determining
whether there was a usable quantity of the drug. 

Appellant also argues “since both
officers assumed the contraband was marijuana, it was sent to the DPS lab for
testing, which the DPS lab returned with a report that stated ‘no analysis was
performed.’”  Appellant’s argument
implies that it was sent to the lab because of the officers’ uncertainty, but
there is no evidence in the record that supports that interpretation.  During Trooper West’s testimony at trial, appellant’s
counsel pointed out a notation in a report that stated, “Analysis will be
performed on request of prosecuting attorney.” 
West testified that the contraband was sent to the DPS lab, and in
regard to the report, he testified, “That is what they send back.  That is how our lab does it now.”  In other words, West indicated that was the
lab’s standard procedure for handling drug evidence.  Moreover, the Texas Court of Criminal Appeals
has expressly held that because of marijuana’s distinct appearance and odor,
expert opinion testimony and chemical testing are not necessary, and the drug
can be identified by lay opinion testimony of a police officer who observed the
substance.  Osbourn, 92 S.W.3d at 537–38.

Lastly, appellant argues that Trooper
West and Officer Williams were not qualified as expert witnesses.  Notwithstanding the fact that appellant’s failure
to object waived any error complained of, we note that the appellant’s
complaints are identical to those raised and overruled in Osbourn.  See 92 S.W.3d at 535 (holding police
officer could give lay opinion testimony that substance was marijuana).   

Having reviewed all the evidence
presented under the respective standards of review, we conclude the evidence is
both legally and factually sufficient to support the trial court’s conviction for
possession of a usable quantity of marijuana.  West and Williams’s testimony, based on their
training, experience, and observations at the scene is sufficient to establish
the element of “usable” quantity of marijuana.          See Rumsey v. State, 675 S.W.2d 517, 521
(Tex. Crim. App. 1984) (holding officers testimony that substance was believed
to be marijuana was sufficient to support conviction for possession, even where
State did not offer the seized marijuana into evidence).  Here, in addition to the officers’ testimony,
the fact-finder also had the ability to examine the contents of the baggie
seized from appellant’s vehicle.  We conclude that
the evidence is legally sufficient for a rational trier of fact to have found
the elements of possession of a usable quantity of marijuana beyond a
reasonable doubt.  See Tex.
Health & Safety Code Ann. § 481.121; Laster, 275 S.W.3d at
517.  

Weighed in a neutral light, the evidence is not so
weak that the verdict is clearly wrong and unjust.  See Laster, 275 S.W.3d at 518.  Moreover,
no evidence was presented contradicting the opinion of Trooper West and Officer
Williams.  Consequently, the finding of
guilt cannot be said to be against the great weight and preponderance of the
evidence.  See Watson, 204 S.W.3d at 417. 
We conclude that the evidence is legally and factually sufficient to
support the conviction for possession of a usable quantity of marijuana.

          We overrule appellant’s third issue
on appeal.

Conclusion

          We affirm the judgment of the trial court.

 

 

 

                                                          

George C. Hanks, Jr.

                                                          Justice

 

Panel consists of Justices Jennings, Hanks, and Bland.

Do not publish.  See Tex.
R. App. P. 47.2(b).

 











[1]
              The
81st Texas Legislature amended Texas Health & Safety Code
Section 481.121, effective September 1, 2009. 
The amendment does not affect the disposition of this case.  Accordingly, from this point forward, we will
cite to the current statute.





[2]
              The
Texas Constitution gives no greater protection than the United States Constitution.
See Johnson v. State, 912 S.W.2d 227,
235–36 (Tex. Crim. App. 1995). Although appellant raises separate complaints
regarding the United States and Texas Constitutions, our analysis remains the
same under either constitution. Consequently, because appellant addresses the
federal and state cases together, we do the same.